# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CINCLIPS, LLC,                                    )
     a Georgia Limited Liability Company     )
                                   )
Plaintiff,                                       )
                                      )     Case No. 8:16-cv-01067-SDM-JSS
v.                                               )
                                      )
Z KEEPERS, LLC,                                  )
     A Florida Limited Liability Company      )
                                      )
Defendant.                                       )
_____ /

## CINCLIPS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND NO INVALIDITY OF CLAIMS 8-13 AND 16-20 OF THE '609 PATENT

Z Keepers' U-Mount infringes Claims 8-13 and 16-20 (the "Asserted Claims") of U.S. Patent No. 9,133,609 ("the '609 Patent"). Cinclips is entitled to summary judgment finding Z Keepers has literally infringed, and continues to literally infringe the Asserted Claims of the '609 Patent by using, distributing, selling, and offering to sell U-Mounts to its customers.

Z Keepers has also failed to sustain its clear and convincing burden to establish its invalidity theories. Cinclips is therefore entitled a summary judgment determination that the '609 Patent's claims are not invalid.

## I.      Cinclips and the '609 Patent

Dow Blaine is the founder and owner of Cinclips, and the inventor of the '609 Patent. Blaine has been in the stone industry for over thirty-two (32) years, *see* Decl. Blaine at ¶¶ 2-4, attached as Exhibit A. A regular issue that arose in the stone industry is that undermounted sinks would fall due to the lack of support. *Id*. at ¶ 5. In 2013, Blaine set out to solve this problem, which resulted in the '609 Patented invention. *Id*. at ¶ 6.

1

The '609 Patent claims a mounting driver for undermounting a sink to a support surface. Undermounting a sink fully beneath the surface of a countertop has become very popular based upon the aesthetics of a countertop that is unencumbered with the rim of a sink.  ['609 Patent Abstract, Dkt. 33-1, p. 1].  Securing sinks in this manner is very limited as one cannot simply screw the sink to the underside of the countertop.  *Id*.  The '609 Patent solves this dilemma by providing a mounting driver for undermounting a sink to a support surface.

The mounting driver features a support bar and a mounting bracket, numbers 16 and 42, respectively:



FIG. 5

FIG. 6

FIG. 7

[Dkt. 33-1, p. 6].  The support bar, which features an I-beam construction, is "shaped and dimensioned for positioning between an underside of the sink and a wall of a cabinet at an

angular orientation relative to the wall." ['609 Patent Abstract, Dkt. 33-1, p. 1].  The support bar

includes a first and second end, and "the second end of the support bar includes a support beam

extending therealong from the central support body (50) to a distal end and a back-surface cap

member."   [*Id*. at 8:63–65].   The mounting bracket[1] is shaped and dimensioned for fixed

attachment to the wall of the cabinet.  With the first end of the support bar pressed against the

underside of the sink, the second end of the support bar is secured to the wall of a cabinet.  When

installed correctly, the invention can support up to 550 pounds of weight.  This strength is owed

to the I-beam construction, which allows the support bar to resist both bending and shear forces.



FIG. 1

---

[1] The mounting bracket is not claimed in the Asserted Claims.

## II.      Summary judgment standard.

Summary judgment is appropriate where no genuine issues of material fact exist.  Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Summary judgment is mandated by Rule 56 "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Summary judgment of patent infringement is appropriate when there is no material dispute of fact that every claim limitation or its equivalent is found in the accused device.  *See, e.g.*, *Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284 (2007) (affirming summary judgment of infringement); *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225 (Fed. Cir. 2005) (same); *N. Telecom Ltd. V. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281 (Fed. Cir. 2000) (same); *Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420 (Fed. Cir. 1997) (same).

When evaluating invalidity under 35 U.S.C. § 282, the Patent-in-Suit is presumed valid and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  Any invalidity assertion on any statutory basis must be proved by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). The party asserting invalidity has "the initial burden of going forward with evidence to support its invalidity allegation," *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).   The moving party must only demonstrate that the nonmoving party "failed to produce clear and convincing evidence on an essential element of a defense upon which a

reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955 962 (Fed. Cir. 2001).

## III.    The Court should adopt Cinclips' proposed claim construction.

Before ruling on infringement or invalidity, this Court must first construe the eight (8) disputed terms in the asserted claims of the '609 Patent. *See Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1361 (Fed. Cir. 2007) ("Determining whether a claim has been infringed requires a two-step analysis.   First, the claim must be properly construed to determine its scope and meaning." (citations omitted)); *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003) (noting the first step in analyzing certain invalidity contentions "is a proper construction of claims").   The parties have submitted a Chart of Disputed Terms [Dkt. 32], the matter is fully briefed [Dkts. 33, 35, 36], and it is proper for this Court to construe the disputed claims at summary judgment.   *See Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1356 (Fed. Cir. 2006) (noting that a *Markman* order was not necessary due to the district court's "carefully-crafted summary judgment opinion").

For the reasons set forth in Cinclips' Opening Claim Construction Brief [Dkt. 33] and Reply in Opposition to Defendant's Claim Construction Brief [Dkt. 36], Z Keepers' proposed claim construction is unnecessarily narrow and will only add confusion to the disputed terms, which are clear on their face and do not require construction.   Z Keepers' proffered constructions are simply attempts to redraft the Asserted Claims in order to carve out Z Keepers' infringing product.

For example, Z Keepers proposes the terms "a second end of the support bar" be construed as "a second terminal portion of the support bar", and "screw holes" be construed as "holes allowing the passage of a mounting screw."   [Dkt. 32-2, pp. 1-2].   "[A]lthough every

word used in a claim has a meaning, not every word requires a construction." *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005). This is particularly true where the proposed construction serves "only to add meaningless verbiage to the definition of the claimed invention." *Hastings v. United States*, 78 Fed. Cl. 729, 734 (2007) (quoting *Harris Corp v. Ixys Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997)).

Z Keepers appears most focused on the easily understood term "along" in the context of where the "plurality of holes" must be on the support bar. *See* Dkt. 35, pp. 7-10 (arguing that U-Mount's screw holes are not "formed along the length of the second end of the support bar" because of their triangular arrangement and upward angle); *see also* Defendant's Answers to Plaintiff's First Set of Interrogatories, attached as Exhibit C, pp.4-5. Z Keepers' argument fails because: "along" is readily understood, and the '609 Patent's claim scope necessarily includes only a single screw hole, as evidenced by the recently issued '898 Patent. The '898 Patent, which is a continuation of the '609 Patent[2], requires only: "extending through the back-surface cap member is at least one screw hole formed in the second end of the support bar for the passage of a mounting screw." *See* Exhibit B at Claims 7 and 14.

The Court should adopt Cinclips' proposed claim construction and find that no construction is necessary.

## V.     Z Keepers' "U-Mount" infringes the Asserted Claims.

The U-Mount literally infringes every Asserted Claim of the '609 Patent. A two-step process is followed for determining infringement, "wherein the court first construes the claims and then determines whether every claim limitation, or its equivalent, is found in the accused

---

[2] A continuation patent application is an application for an invention disclosed in a prior patent application. *See* Manual for Patent Examination Procedure § 201.07 (available https://www.uspto.gov/web/offices/pac/mpep/s201.html#ch200_d1ff70_2cc79_146). A copy is attached as Exhibit H. "The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application." *Id.*

device." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008). "Summary judgment on the issue of infringement . . . is proper when no reasonable jury could find that every limitation recited in a properly construed claim . . . is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353–54 (Fed. Cir. 1998)).  A party is liable for patent infringement even if it infringes only a single patent claim. *Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).  "[A] finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).  To prove infringement, "a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *Jardin v. Datallegro, Inc.*, 2011 WL 1311732, *2 (S.D. Cal. Apr. 1, 2011) (*quoting ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1313 (Fed. Cir. 2007)).  Where, as here, "accused matter falls clearly within the claim, infringement is made out and that is the end of it." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950).  Circumstantial evidence of use is sufficient to establish infringement.  *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) (relying on evidence of extensive sales to satisfy burden of showing infringement).

Infringement is not avoided if the accused device has extra parts, ingredients, or steps, respectively, to those claimed.  *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1380-81 (Fed. Cir. 2001); *Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999).  An accused device may be found to infringe if it is reasonably capable of satisfying the claim

limitations, even though it may also be capable of non-infringing modes of operation. *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1343 (Fed. Cir. 2001).

As set forth in Cinclips' Infringement Contentions, attached as Exhibit D, the U-Mount literally infringes every Asserted Claim of the '609 Patent.  Both inventions are "[a] one-piece mounting driver for undermounting a sink to a support surface . . . ." ('609 Patent, Claims 8, 16, Dkt. 33-1).  Like Cinclips' invention, the U-Mount also features "a support bar shaped and dimensioned for positioning between an underside of the sink and a wall of a cabinet," and "the second end of the support bar includes a support beam extending therealong from the central support body to a distal end and a back surface cap member . . . and extending through the back surface cap member are a plurality or screw holes . . . ." ('609 Patent, Claims 8, 16).



Claims 8 and 16 of the '609 Patent further indicate that when "the first end of the support bar [is] pressed against the underside of a sink, the second end of the support bar is rigidly secured to the wall of the cabinet."  U-Mounts also plainly embodies this feature:



The U-Mount, like Cinclips' invention, features "a sink engaging member including a curved surface shaped and dimensioned to engage the underside of the sink" on the first end of the driver (Claims 9, 17):



Claims 10, 11, 18 and 19 are similarly infringed, as the U-Mount features "a support beam extending perpendicular to the back-surface cap member" on the second end (Claims 10, 18), and its support beam "bisects the back-surface cap member and lies in a plane that is perpendicular to the back side of the support bar surface" (Claims 11, 19):



Claims 12, 13, and 20 are infringed because the U-Mounts' "screw holes are positioned on opposite sides of the support beam":



Finally, U-Mounts' use of an I-beam construction further infringes Claim 16 of Cinclips' '609 Patent.   Use of an I-beam construction is a key piece of Cinclips' invention, as it provides significant support for a variety of different bending forces.   This is why the furring strip—a

piece of wood without the I-beam feature—never accomplished what Cinclips' mounting driver has.

Z Keepers advances two noninfringement arguments: (1) their products lack "a plurality of screw holes formed along the length of the second end of the support bar for the passage of a mounting screw", and (2) their products "lack the claimed ordered combination of a 'central support body' of a support bar and a separate 'second end of the support bar' that 'includes a support beam extending therealong from the central support body to a distal end and a back-surface cap member.'" *See* Exhibit C at pp. 4-5.  Both arguments are unavailing.

U-Mounts features a "plurality of screw holes formed along the length of the second end of the support bar for the passage of a mounting screw":



A "plurality of screw holes" means more than one hole.  As demonstrated by the above image, there is no question that the U-Mount contains "a plurality of screw holes."  The holes are also "along the length of the second end of the support bar."  Z Keepers attempts to narrow

"along the length" to require the screw holes to be arranged in a line formation, carving out their triangular screw hole formation. But "along" is not so narrow. In fact, "along" is readily understood to mean "at a point on (something)." *See* Dkt. 32-3. Indeed, a patent need only disclose a best mode of operation and does not need to disclose every possible embodiment. It is axiomatic that despite the specification describing specific embodiments of the invention, the claims should not be confined to specific embodiments. *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005). Even if the patent specification is limited to a single embodiment, the claims of the patent cannot be construed to that particular embodiment. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). Notwithstanding the '609 Patent describing a single embodiment of the invention, the '609 Patent allows for the construction of the term "along" to include those embodiments that do not configure the screw holes in a linear formation.

Additionally, to the extent the Court is persuaded that "along" requires a particular line formation, the U Mounts configuration is equivalent to that claim limitation under the doctrine of equivalents. *See Intendis GMBH v. Glenmark Pharmaceuticals Inc.,* ("Even when an accused product does not meet each and every claim element literally, it may nevertheless be found to infringe the claim "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.") (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). "One way to show equivalence is by showing on an element-by-element basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product, often referred to as the function-way-result test." *Id.* (quotations removed).

The U-Mounts screw hole positioning performs substantially the same function as the "plurality of screw holes" limitation of the Asserted Claims in substantially the same way with substantially the same result.

Z Keepers has identified no disclaimer that would support its overly limited construction of "along," and its argument has the claim construction analysis backwards. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (an accused infringer cannot overcome the heavy presumption that claims should be given their ordinary meaning "simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification"); *Liebel–Flarsheim Co.*, 358 F.3d at 906 (Fed. Cir. 2004) ("[T]he claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope."). Here, there is no indication that the claim scope was intended to be so limited. Therefore, both Z Keepers' overly narrow construction of "along," and its first noninfringement argument should be rejected.

Z Keepers' proffered second reason for noninfringement is confusing and unconvincing. Z Keepers claims their products do not infringe because they "lack the claimed ordered combination of a 'central support body' of a support bar and a separate 'second end of the support bar' that 'includes a support beam extending therealong from the central support body to a distal end and a back-surface cap member.'" It appears here that Z Keepers is arguing the U-Mount does not infringe because its support beam extends to what it points to as the front surface cap member. But the accused support beam also extends to the back-surface cap member as shown in Cinclips' infringement contentions. Whether the accused support beam also extends to other components not claimed in the Asserted Claims is irrelevant to the question of infringement. Z Keepers' second noninfringement argument must be rejected.

14

## VI.    The '609 Patent is not Invalid

Z Keepers has fallen far short of its clear and convincing burden to prove invalidity. First, Z Keepers basis its invalidity argument on a piece of wood it acquired and built after this litigation began – such a piece of wood is simply not prior art.  Second, Z Keepers falls far short of establishing the *John Deere* obviousness factors.

### A.    Z Keepers cannot meet its burden to prove that any asserted claim of the '609 Patent is invalid as obvious.

#### 1.    The "Furring Strip" is not prior art.

Z Keepers concedes it has no anticipation argument suggesting that the claimed invention is invalid under 35 U.S.C. § 102.  Instead, Z Keepers argues that the invention was obvious in light of a particularly configured piece of wood (a furring strip).  But Z Keepers provides no evidence that the furring strip was in use more than a year prior to the effective filing date of the '609 Patent, namely October 23, 2013.  *See* MPEP § 706.02 at VI(C) (attached hereto as Exhibit I).  Instead, Z Keepers relies on a furring strip it created for the sole purpose of preparing its invalidity contentions, years after the patent application was filed.  *See "Z Keepers Answers to Plaintiff's Second Set of Interrogatories,"* attached as Exhibit E, at Interrogatory 11 (confirming the furring strip used in its invalidity contentions was purchased by Z Keepers "sometime in the Spring or Summer of 2016"; *see also* Defendant's Response to Plaintiff's First Request for Admission, attached as Exhibit F, at Response 7.  And the furring strip design Z Keepers used was taken by Z Keepers' principal from Cinclips' principal based on a prior prototype of the patented invention.  *See* Exhibit A, Blaine Decl. at ¶ 8.   *See also* D. Smith Depo[3] at 24:16-22; 25:18-26:5. The rough deposition transcript excerpt is attached as Exhibit J; the document used as deposition Exhibit 9, referred to in the transcript, is attached as Exhibit K.  And Mr. Smith

---

[3] Per the Court's Order [Dkt. 53], Mr. Smith's deposition was taken today, May 24, 2017.  Citations to his deposition cite the rough transcript.  Plaintiff can provide a finalized transcript once completed by the court reporter.

admits he did not see this reconfigured wood version until 2014 – after the '609 patent application was filed. *Id*. at 27:16-19.

Z Keepers tries to get around this defect with the unsupported that "furring strips . . . have been used for decades." First, Z Keepers provides no evidence to support this position. And more importantly, the question is not whether wood was used to support sinks, but rather whether wood cut in the configuration that Z Keepers manufactured for its invalidity contentions *before* the patented invention. Simply stated, it wasn't. Z Keepers learned of this technique from an earlier prototype of the patented invention. Z Keepers' invalidity argument must fail.

2.  <u>Z Keepers has not demonstrated obviousness by clear and convincing evidence.</u>

Even assuming *arguendo* Z Keepers could somehow come up with evidence[4] that its manufactured furring strip somehow predated the '609 Patented invention, Z Keepers still fails to establish obviousness in light of its other asserted prior art. To prove obviousness, Z Keepers must demonstrate that the subject matter of the Asserted Claims of the '609 Patent "would have been obvious at the time the invention was made to a person of ordinary skill in the art to which the subject matter of the invention pertains." 35 U.S.C. § 103(a). In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), the Court set out a framework for applying the statutory language of 35 U.S.C. § 103:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

*Id*. at 17-18. "While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls." *KSR Int'l. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007).

---

[4] Discovery closed on February 20, 2017.

Obviousness requires more than mere conclusory allegations: "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbot Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (citations and quotations omitted). Analyzing obviousness is a two-step inquiry. *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003). The first step is a proper construction of the claims by the court. *Id*. The second step is a comparison of the construed claims to the prior art. *Id*.

Z Keepers contends that Claims 8–10 are obvious over the Furring Strip "in view of the disclosure in Grayson (US 2010/0301175) of a sink engaging member having a curved surface." Z Keepers' Preliminary Invalidity Contentions, attached as Exhibit G. According to Z Keepers, Claims 11-13 and 16-20 are obvious over the Furring Strip in view of the teaching of a plastic I-beam brace described in Witte (US 4,047,340), an ABS plastic I-beam from Kit Kraft, and images of an I-beam published on Wikipedia. *Id*. Z Keepers' obviousness contentions can be categorized as three arguments: (1) it would be obvious to modify the Furring Strip to provide a curved first end; (2) an I-beam construction is an obvious engineering design choice; and (3) placing the screw holes on opposite sides of the support beam so as to not interfere with the I-beam construction was an obvious choice. *Id*.

Z Keepers fails to offer any substantive analysis as to why a person of ordinary skill in the art would have modified the prior art to render the Asserted Claims obvious. Rather, Z Keepers merely points to prior art and alleges obviousness—a practice the Supreme Court has rejected:

> [A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art . . . This is so because inventions in most, if not all, instances rely upon building blocks

> long since uncovered, and claimed discoveries almost of necessity
> will be combinations of what, in some sense, is already known.

*KSR*, 550 U.S. at 418-19.  But identifying prior art purportedly reflected in the '609 Patent is simply not enough; Z Keepers must connect the dots and advance fact-based reasons why a person of ordinary skill in the art would have combined the prior art in the way the '609 Patent does.  In place of a meaningful analysis of obviousness is Z Keepers' conclusory statements that the elements are "obvious design choice[s]," and "well-known practice[s]."  *See* Exhibit G.

Summary judgment of no invalidity based upon anticipation and obviousness of the Asserted Claims of the '609 Patent is appropriate because Z Keepers has not properly compared any of these claims to any piece of prior art.

**B.** **Z Keepers fails to demonstrate that any Asserted Claim is indefinite.**

In its Invalidity Chart (Exhibit G), Claim Construction Opposition Brief ("CCOB" Dkt. 35), and the Joint Claim Construction Statement ("JCCS" Dkt. 32), Z Keepers contends that certain, albeit different, Asserted Claims are invalid as indefinite under 35 U.S.C. §112.[5]  Those claims are:

| Claim(s) | Language | Invalidity Chart | CCOB | JCCS |
|---|---|---|---|---|
| 8 | "A back surface cap member" | | ✓ | |
| 8 | "A distal end" | | ✓ | ✓ |
| 8, 16 | "Shaped and dimensioned to engage the underside of the sink" | ✓ | | |
| 8, 16 | "The length of the second end of the support bar" | | ✓ | |

---

[5] After identifying "back side of the support bar surface" as indefinite in the Invalidity Chart, Z Keepers subsequently agreed to the construction of the term as "a back side of the support bar" in the JCCS.  [Dkt. 32-1]. Accordingly, it appears Z Keepers no longer maintains this portion of Claim 8 is indefinite.

| 10 | "Extending perpendicular to the back surface cap member" | ✓ | | |
| 16 | "The second end of the support bar is angularly oriented relative to the central support body" | | ✓ | ✓ |

1.     Z Keepers construes and comprehends multiple claims, undermining its indefiniteness contentions.

At the outset, Cinclips notes that Z Keepers has set forth a proposed construction of three of the six purportedly indefinite claims. [Dkt. 32-2] (proposing construction for "a back-surface cap member"; "a distal end"; and "the length of the second end of the support bar").  "A claim that is amenable to construction is not invalid on the ground of indefiniteness."  *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006).  Although not necessary in this instance, these terms are amenable to construction (as recognized by Z Keepers), understood by people of ordinary skill in the art, and thus not indefinite.  *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("If a claim is indefinite, the claim, by definition, cannot be construed.").

Z Keepers also had no trouble understanding "the length of the second end of the support bar" in its Answer to Plaintiff's First Set of Interrogatories.  There, Z Keepers argues that its "products wholly lack a plurality of screw holes formed along the length of the second end of the support bar for the passage of a mounting screw as required by claims 8–13."  Z Keepers even includes an illustration of the "length of the second end" at page 4.  Z Keepers' indefiniteness contentions are belied by its ability to comprehend and construe certain claim language.

2.     Z Keepers has not demonstrated indefiniteness by clear and convincing evidence.

An accused infringer claiming indefiniteness must "demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the

19

claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Wellman Inc. v. Eastmen Chem. Co.*, 642 F.3d 1355, 1366 (Fed. Cir. 2011). In recognition of the statutory presumption of patent validity, courts will only find a claim indefinite "if reasonable efforts at claim construction prove futile." *Id.* Indeed, absolute clarity is not required to demonstrate definiteness. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("If the meaning of the claim is discernable, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." (quoting *Exxon Research and Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001))). That some claim language may not be precise does not automatically render a claim invalid. *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). Close questions of indefiniteness are properly resolved in favor of the patentee. *See Exxon Research & Eng'g*, 265 F.3d at 1380.

None of Z Keepers' proffered explanations of indefiniteness are clear or convincing. For example, Z Keepers claims the phrase "shaped and dimensioned to engage the underside of the sink" is indefinite because "the dimension and shape of the sink and nature of the engagement are not specified." (ICC). But the specification of the '609 Patent adequately answers these questions, while providing illustrations. Similarly, reading "the second end of the support bar is angularly oriented relative to the central support body" in light of the specification adequately informs those skilled in the art about the scope of the intervention. The specification describes that the second end of the support bar is curved such that the back surface cap member defines a concave surface. '609 Patent 7:41–44. The specification further discusses how the holes can be spaced to provide versatility in the positioning of the support arm. *Id.* at 8:10–14. And the

curved surfaces allow for mounting the support bar at various angular orientations "relative to the wall of the cabinet and the sink." *Id*. at 5:13–15.  Indeed, every purportedly indefinite claim is easily understood in light of its "claim language, [] specification, the prosecution history, and [a person's] knowledge in the relevant art."  *Wellman*, 642 F.3d at 1366.  This Court should reject Z Keepers' indefiniteness contentions.

## VII.    Conclusion

Cinclips is entitled to summary judgment confirming that Z Keepers' U-Mount literally infringes the Asserted Claims.  Further, Cinclips is entitled to summary judgment that the '609 Patent is not invalid.  There are no genuine issues of material fact on these issues, and Cinclips requests this Court grant this motion.

May 24, 2017

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack
Florida Bar No.: 26802
Greenberg Traurig, LLP
101 E. Kennedy Blvd
Suite 1900
Tampa, FL 33602
(813) 318-5700
(813) 318-5900 (facsimile)
pollackw@gtlaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2017, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack