UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CINCLIPS, LLC,

    Plaintiff,

v.                                                                  CASE NO. 8:16-cv-1067-T-23JSS

Z KEEPERS, LLC,

    Defendant.
_____/

## **ORDER**

Many homeowners prefer an "undermounted" sink because no rim protrudes onto the counter. The parties in this action manufacture competing "mounting drivers," which support from beneath an undermounted sink's weight. In 2015 the plaintiff, Cinclips, secured U.S. Patent 9,133,609, which discloses a "one-piece mounting driver." According to Cinclips, defendant Z Keeper's one-piece mounting driver (pictured in Appendix A) infringes the '609 patent (the preferred embodiment of which is illustrated in Appendix B). Z Keepers argues that the different design of the two products precludes a finding of infringement and that prior art (including a wood furring strip pictured in Appendix C) renders the '609 patent obvious. The parties submit claim-construction briefs (Docs. 33, 35, and 36), and Cinclips moves (Doc. 54) for summary judgment.

**1. Claim construction**

Construing the claim begins with the claim's words. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). If "clear on its face," the claim requires no construction unless evidence intrinsic to the patent (for example, the specification or the prosecution history) shows the patent-holder's intent to attribute an unusual meaning to a word. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). If the claim appears unclear, extrinsic or intrinsic evidence can resolve the ambiguity. *Interactive Gift Exp.*, 256 F.3d at 1331–32. In this action, the parties dispute eight terms (Doc. 32-2), each of which Cinclips argues is clear and requires no construction.

**A. "screw holes formed along the length of the second end of the support bar" (Claims 8 and 16)**

Arguing that the phrase "along the length" is unclear, Z Keepers proposes the construction "screw holes formed in a line matching the direction of the length of the second end of the support bar." (Doc. 35 at 7) Cinclips responds correctly that the phrase is clear and requires no construction.

**B. "distal end" (Claim 8)**

Z Keepers correctly observes that Cinclips uses the word "end" inconsistently throughout the patent. In most instances, "end" refers to a general area either supporting the sink or affixed to the cabinet. For example, numerals 44 and 82 in figure 6, both of which describe the "first end" (E.g., '609 patent at 4:40–48), appear to identify generally a side that touches the sink. But claim 8 confusingly discloses

that "the second end of the support bar includes a support beam extending . . . to a distal end." ('609 patent at 9:47–49)  In short, claim 8 discloses the "end of . . . a[n] end."  The '609 patent uniformly identifies as the "distal end" of the "second end" ('609 patent at 7:26 and 8:2, which both cite numeral 149) a terminal point on the support bar furthest from the first end of the mounting driver.  Z Keepers' proposed construction, a "terminal point on the support bar farthest from the first end of the support bar," resolves the disparate usage of "end" and retains the intended meaning as evidenced by the specification.

### C. "a second end of the support bar" (Claims 8 and 16)

Z Keepers proposes the construction "a second terminal portion of the support bar." (Doc. 35 at 10)  Confusingly, the phrase "a second end of the support bar" appears nowhere in claims 8 and 16.  An order need not construe a phrase that appears nowhere in a claim.  Construed as a request to interpret "second end of the support bar" ('609 patent at 8:63 and 9:6 (claim 1), 9:47 and 54 (claim 8), and 10:42–44 (claim 16)), Z Keepers' proposal warrants denial.  Although Z Keepers correctly observes the disparate usage of "end" throughout the patent, the above construction of "distal end" resolves the inconsistency and obviates the need to construe "second end of the support bar," a consequently clear term.

### D. "the length of the second end of the support bar" (claims 8 and 16)

Z Keepers proposes "the linear dimension of the second end of the support bar extending from the central support body in a direction away from the first end."

(Doc. 35 at 11) The word "length" is clear and requires no construction. Also, Z Keepers identifies no ambiguity in the phrase "second end of the support bar" and articulates no reason to add to the claims the phrase "extending from the central support body in a direction away from the first end."

### E. "a back surface cap member" (claim 8)

In a conclusory paragraph, Z Keepers argues without explanation that the phrase "would be indefinite without reference to the structure so named and described in the specification." (Doc. 35 at 13) As Cinclips correctly argues (Doc. 36 at 6), Z Keepers fails to identify ambiguity in the phrase.

### F. "the second end of the support bar includes a support beam extending therealong from the central support body to a distal end and a back surface cap member" (claim 8)

Claim 8 discloses a support beam extending from the "central support body" to the "distal end" and to the "back surface cap member." Z Keepers correctly argues (Doc. 35 at 13) that the "expression 'from point A to point B and point C'" might confuse a finder of fact, but Z Keepers' proposed construction suffers from an ambiguity identical to the claim. The requested construction discloses a "support beam extending in the direction of the length of the second end from the central support body to a terminal point on the support bar farthest from the first end, and the support beam extending in the direction of the length of the second end from the central support body to a back surface cap member." (Doc. 35 at 13) Z Keepers' identifies as a "potential ambiguity" the support beam's extending to two distinct

points (the "distal end" and the "back surface cap member"), but Z Keepers' proposed construction specifies the support beam's extending to the same two distinct points (although Z Keepers substitutes its requested construction "terminal point" in place of "distal end"). Because Z Keepers' requested construction adds words without adding clarity, Z Keepers' requested construction is denied.

**G. "Screw holes" (claims 8, 16, and 20)**

Z Keepers proposes "holes allowing the passage of a mounting screw." (Doc. 35 at 14) But a clear term requires no construction. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (affirming the district court's "plain reading of the claim text" because the disputed terms "are not technical terms of art [] and do not require elaborate interpretation.").

**H. "the second end of the support bar is angularly oriented relative to the central support body"**

Asserting that the words are indefinite, Z Keepers argues that Cinclips "attempted to vaguely generalize the invention as actually described, from 'curve' to 'angularly' oriented' and from 'concave' . . . to specifying no directional orientation at all." (Doc. 35 at 15) Cinclips responds that the specification permits ascertaining the scope of the claim term.

In *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120 (2014), which compels rejecting Z Keepers' indefiniteness argument, the district court concluded that the term "spaced relationship" was indefinite because the term "'did not tell [the court] or anyone what precisely the space should be,' or even supply 'any parameters' for

determining the appropriate spacing." 134 S.Ct. at 2127 (quoting the district court).
Reversing the district court, the Federal Circuit held that "a claim is indefinite only when it is not amenable to construction or [is] insolubly ambiguous." 715 F.3d 891, 898 (Fed. Cir. 2013). Recognizing that the Federal Circuit's "insolubly ambiguous" standard incentivized a patent applicant to "inject ambiguity" into a claim, the Supreme Court reversed the Federal Circuit's decision and held that a patent is indefinite only if "the claims, viewed in light of the specification and prosecution history, inform" with reasonable certainty a person skilled in the art about the scope of the invention. 134 S.Ct. at 2129.

On remand from the Supreme Court, the Federal Circuit held that the claim and the specification permitted ascertaining with "reasonable certainty" the scope of the term "spaced relationship." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1384 (Fed. Cir. 2015). Although the disputed term involved a measurement (the distance between two items), on remand the Federal Circuit emphasized *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014), which observes that "absolute or mathematical precision is not required."

Citing the '609 patent at 7:41–44, Cinclips argues that the specification "adequately informs those skilled in the art about the scope of the invention." (Doc. 33 at 14) The specification mentions a "concave surface" with a "radius of curvature." ('609 patent at 7:47) As Z Keepers correctly observes, the patent erroneously uses "concave"; the second end is convex. Also, Cinclips cites the

specification at 5:13–15, which states that the curved surface at the second end permits mounting the support bar at "various angular orientations relative to the wall of the cabinet." But the specification language in column 5 quoted by Cinclips involves an item excluded by the patent. A claim "defines the scope of the right to exclude." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Claim 16 discloses a "one-piece mounting driver," but the purported "preferred embodiment" in columns 3, 4, and 5 involves a two-piece mounting driver. ('609 patent at 3:63–65, which describe the embodiment's two pieces, a "support bar" and a "mounting bracket") Nothing in column 5 of the specification informs a person about the "angular orientation" in claim 16.

Although column 5 offers little or no aid in ascertaining the scope of claim 16, column 8 and figures 16 through 18 permit an inference of the degree of "angular[] orient[ation]." As figures 16 and 18 illustrate, the second end of the preferred embodiment contains four sets of screw holes, but an installer uses only the "preferred" set of screw holes, that is, the set of screw holes that allows the "perpendicular application of a screw into the wall of the cabinet." ('609 patent at 8:39–41) Although the angle at which the second end approaches the cabinet depends on the distance between the sink's edge and the cabinet, the universe of angles that permit perpendicular application of the screws is limited. If the sink's edge appears too close to the cabinet and results in a near-vertical mounting driver, the screw bears most or all of the sink's weight and the mounting driver fails to

distribute the sink's weight to the cabinet wall. If the sink's edge appears too far from the cabinet, which results in a near-horizontal mounting driver, the mounting driver similarly fails to distribute the sink's weight. Because the foundational requirement that the mounting driver adequately distribute the sink's weight to the cabinet wall predictably limits the universe of angular orientations, the figures and the specification permit a person skilled in the art to ascertain with "reasonable certainty" the narrow range of "angular[]orient[ation]." The term is not indefinite.

**I. Conclusion**

This order adopts Cinclips' proposed construction for each term except "a distal end," which means "a terminal point on the support bar farthest from the first end of the support bar." Also, in accord with the parties' request (Doc. 32-1), "a back side of the support bar surface" means a "back side of the support bar." After construction, claim 8 discloses the following (italics denote a construed term and brackets denote an agreed omission):

> A one-piece mounting driver for undermounting a sink to a support surface, comprising:
>
> A support bar shaped and dimensioned for positioning between an underside of the sink and a wall of a cabinet at an angular orientation relative to the wall, the support bar including a first end having a sink engaging member with a curved surface shaped and dimensioned to engage the underside of the sink and a second end with a central support body therebetween;
>
> the second end of the support bar includes a support beam extending therealong from the central support body to *a terminal point on the support bar farthest from the first end of the support bar* and a back surface cap member, the support beam lying in a plane that is perpendicular to a back side of the support bar [] as

defined by the back surface cap member, and extending through the back surface cap member are a plurality of screw holes formed along the length of the second end of the support bar for the passage of a mounting screw;

wherein with the first end of the support bar pressed against the underside of the sink, the second end of the support bar is rigidly secured to the wall of the cabinet.

## 2. Summary judgment

Cinclips moves (Doc. 54) for summary judgment and argues that Z Keepers' product infringes claims 8 and 16 and claims 9 through 13, which depend from claim 8, and claims 17 through 20, which depend from claim 16. Z Keepers responds (Doc. 59) that prior art renders the patent obvious and that material disputes of fact preclude finding infringement as a matter of law.

### A. Obviousness

Z Keepers argues that the prior art discloses a wood "furring strip" and that "it would have been obvious to modify an angled furring strip used as a sink support brace to produce the invention of claims 8 and 16." (Doc. 59 at 7) Cinclips states that Z Keepers "provides no evidence to support" the prior-art argument. (Doc. 54 at 21) But David Smith affirms (Doc. 58-1, Smith's affidavit) using wood furring strips as early as 1997, and Alan Kaiser affirms (Doc. 58-2, Kaiser's affidavit) using wood furring strips as early as 2008. Citing *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), Z Keepers argues that common sense supports modifying the wood furring strips to produce the invention in the '609 patent. (Doc. 59 at 7) *KSR International* holds that a patent is "likely obvious" if a person of ordinary skill in the

art can observe a problem caused by either market pressure or a design challenge and apply a "finite number of identified, predictable solutions" to solve the problem. 550 U.S. at 421. Suffice to say that not every intuitive, sequential, or consequent increment in mankind's knowledge is subject to monopolization through a patent.

Cinclips denies the obviousness of the modifications and argues that Z Keepers fails to explain why a person likely would modify the wood furring stip to produce the claimed invention. (Doc. 54 at 17) In response, Z Keepers articulates a reason for each modification of the wood furring strip, which closely resembles the claimed invention. (E.g., Appendices A and C) Z Keepers states that the "curved" first end of the embodiment in the '609 patent "produces normal contact with the sink at any angle, avoiding stress concentrations at sharp edges." (Doc. 59 at 7) Also, Z Keepers states that "substituting plastic for wood is an obvious design choice for at least the reason that plastic members are easy to mass produce in a consistent shape." (Doc. 59 at 7) Viewed favorably to Z Keepers, the articulated reasons and the affidavits of Smith and Kaiser create a material dispute whether prior art renders obvious the invention in the '609 patent. *See Source Search Tech., LLC v. LendingTree, LLC*, 588 F.3d 1063 (Fed. Cir. 2009) (explaining that an order on a motion for summary judgment must view the record favorably to the non-moving party and must deny summary judgment if the record reveals a dispute of material fact about the obviousness of a patent).

**B. Infringement**

Several disputes of material fact preclude granting Cinclips' motion for summary judgment. In claim 8, the second end of the support bar "includes a support beam extending therealong from the central support body to a terminal point on the support bar farthest from the first end of the support bar and a back surface cap member, the support beam lying in a plane that is perpendicular to a back side of the support bar." (Section 1(I)) In contrast to the invention disclosed in claim 8, no support beam appears visible on Z Keepers' product. (E.g., Appendices A and B)

Also, claims 8 and 16 disclose an invention with "screw holes formed along the length of the second end." But Z Keepers' product features screw holes in a triangular formation. (Appendix A) Again, a dispute whether the allegedly infringing product includes "screw holes formed along the length of the second end" precludes summary judgment.

Even if a defendant's product avoids literally infringing a patent, the defendant might remain liable under equivalence if the defendant's product "performs substantially the same function in substantially the same way to obtain the same result" as the patented invention. *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608 (1950) (internal quotation omitted). Without citing evidence, Cinclips asserts that Z Keepers' "screw hole positioning performs" "in substantially the same way with substantially the same result" "substantially the same function as the 'plurality of screw holes' limitation of the Asserted Claims." (Doc. 54 at 13–14)

Citing David Smith's affidavit (Doc. 59-1), Z Keepers responds that the screw-hole formation of its product accomplishes a different purpose than the formation in the '609 patent: Z Keepers' screws, which attach to a cabinet wall at a non-perpendicular angle, "produc[e] an upward clamping force when they are tightened." (Doc. 59 at 20) Viewed favorably to Z Keepers, the record reveals a material dispute of fact whether Z Keepers' product infringes by equivalence the '609 patent precludes summary judgment.

Additionally, claim 8 discloses an invention with "a first end having a sink engaging member with a curved surface shaped and dimensioned to engage the underside of the sink" ('609 patent at 9:43–45) and, except for omitting "curved," claim 16 identically describes the first end ('609 patent at 10:31–33). But a person can adjust the length of Z Keepers' product by "snapping off" the first end, which produces "a first end that is squared, not curved (claim 8), and not shaped and dimensioned to engage the underside of the sink (claim 16)." (Doc. 59 at 17 (quotation omitted)).

**CONCLUSION**

Viewed favorably to Z Keepers, the record evidences factual disputes whether prior art renders obvious the '609 patent and whether the allegedly infringing product includes (1) a support beam at the second end, (2) a "plurality of screw holes formed along the length of the second end," and (3) a first end "shaped and dimensioned to engage the underside of the sink." Also, a factual dispute remains whether the

triangular screw-hole formation infringes by equivalence the '609 patent.  Cinclips' motion (Doc. 54) for summary judgment is **DENIED**.

Also, Cinclips moves (Doc. 45) to strike Z Keepers' notice (Doc. 43) of supplemental authority and argues that the notice violates Local Rule 3.01(f), which prohibits a party's citing authority through a "letter or the like" mailed to a judge's chambers.  The motion (Doc. 45) is **DENIED**.

ORDERED in Tampa, Florida, on August 24, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE