**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **CINCLIPS, LLC,**<br>　**a Georgia Limited Liability Company** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 8:16-cv-01067-JSS** |
| **v.** ) | |
| ) | |
| **Z KEEPERS, LLC,**<br>　**a Florida Limited Liability Company,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

**PLAINTIFF'S REQUESTED JURY INSTRUCTION <u>NO. 1</u>**
**PRELIMINARY INSTRUCTION**

This is an action for patent infringement.  The patent involved in this case relates to a mounting driver for undermounting a sink to a support surface. Cinclips is the owner of U.S. Patent Number 9,133,609 ("the '609 patent"). This patent may also be referred to as the patent-in-suit.

The owner of a patent has the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States or importing it into the United States.

You have previously been shown the Federal Judicial Center's Introduction to the Patent System video.

**HOW A PATENT IS OBTAINED**

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO").  To obtain a patent, an application for a patent must be filed with the PTO.  The application includes a specification, which should have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.  The specification should also describe what the inventor believed at the time of filing to be the best way of making his or her invention.  The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent.  The purpose of the claims is to point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights.

 After an application is filed, it is reviewed by a trained PTO examiner.  The examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner searches records for "prior art," and he or she also reviews prior art submitted by the applicant.  Generally, prior art is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.  The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable (in other words, "allowed").  This writing from the patent examiner is called an "office action."  More often than not, the initial office action by the patent examiner rejects the claims.  The applicant then responds to the office action and sometimes changes the claims or submits new claims.  This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.  At that time, the PTO "issues" or "grants" a patent with the allowed claims.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

## PATENT LITIGATION

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell a product made by the patented process, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit to attempt to stop the alleged infringing acts and to potentially recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for damages.

A patent is presumed to be valid. In other words, it is presumed to have been properly granted. But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid. Someone sued for allegedly infringing a patent can deny engaging in infringing activities and also can defend by proving the asserted claims of the patent are invalid and/or unenforceable, if the patent owner unfairly procured the patent in some way. This will be discussed further below. The accused infringer must prove invalidity or unenforceability by clear and convincing evidence.

## CONTENTIONS OF THE PARTIES

Cinclips contends that Z Keepers makes, uses, offers to sell, or sells U-Mounts, which infringe claims 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, and 20 of the '609 Patent. Cinclips must prove that Z Keepers infringes the patent-in-suit by a preponderance of the evidence. That means that Cinclips must show that it is more likely that Z Keepers' U-Mounts product infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents." To determine infringement, you must compare the accused product with each claim from the patent-in-suit that Cinclips asserts is infringed. It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Z Keepers' product includes each and every element in that patent claim. If Z Keepers' product does not contain one or more elements in the respective claim, Z Keepers does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

Under the doctrine of equivalents, you may find that Z Keepers' product infringes a claim of the patents-in-suit even if not every element of that claim is present in Z Keepers' product. However, to do so, you must find that there is an equivalent element in Z Keepers' product for

each element of the patent claim that is not literally present in Z Keepers' product. Cinclips must prove that it is more likely than not that Z Keepers' product contains the equivalent of each element of the claimed invention that is not literally present in the U-Mounts product.

Z Keepers denies that it is infringing the patent-in-suit. Z Keepers also contends that the patent-in-suit is invalid and/or unenforceable. Z Keepers contends that the claims of the patent-in-suit are invalid as: (1) obvious to one of ordinary skill in the art; and (2) containing claims that are indefinite.

Invalidity of the asserted patent claims is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the patents-in-suit, you, the jury, have the ultimate responsibility for deciding whether the claims of the patent-in-suit are valid, in other words, whether the claims were properly allowed by the PTO. Z Keepers must prove the facts underlying its invalidity arguments by clear and convincing evidence in order to overcome the presumption of validity. Clear and convincing evidence means that it is highly probable that the fact is true. This is a higher standard than the more likely than not standard but it is not so high as the standard used in criminal law, which is evidence beyond a reasonable doubt.

## SUMMARY OF PATENT ISSUES

You must decide the following three main issues:

1. Whether Cinclips has proved that Z Keepers claims 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, and 20 of the '609 Patent.

2. Whether Z Keepers has proved that claims 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, and 20 of the '609 Patent are invalid.

3. What amount of damages, if any, Cinclips has proved.

## GLOSSARY OF PATENT TERMS

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences or paragraphs appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper** – See "prosecution history" below.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art** – Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings.  In the specification, the inventor describes the invention, how it works, and how to make and use it.

Given            _____
Given as Modified    _____
Denied           _____
Withdrawn       _____

## AUTHORITY

*See generally* American Intellectual Property Law Association's 2017 Model Patent Jury Instructions; 35 U.S.C. § 282; 35 U.S.C. § 284; *Stryker Corp. v. Intermedics Orthopedics, Inc*., 891 F. Supp. 751 (E.D.N.Y. 1995) *aff'd,* 96 F.3d 1409 (Fed. Cir. 1996); *Anderson Co. v. Sears, Roebuck & Co.*, 265 F.2d 755, 761 (7th Cir. 1959); *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,7 F.3d 1571, 1579 (Fed. Cir. 1993).

**REQUESTED JURY INSTRUCTION <u>NO. 2</u>**
**CLAIM CONSTRUCTION**

Before you decide whether Z Keepers has infringed the claims of the patent-in-suit or whether the claims of the patent-in-suit are invalid, you have to understand the patent claims. The patent claims involved here are claims 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, and 20 of the '609 Patent. The claims are intended to define the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

The '609 Patent:

1.      The term "a distal end" means "terminal point on the support bar farthest from the

first end of the support bar."

2.      The term "a back side of the support bar surface" means "a back side of the support

bar."


After construction, Claim 8 discloses the following (italics denote a construed term and

brackets denote an agreed omission):

> A one-piece mounting driver for undermounting a sink to a support surface, comprising:
>
> A support bar shaped and dimensioned for positioning between an underside of the sink and a wall of a cabinet at an angular orientation relative to the wall, the support bar including a first end having a sink engaging member with a curved surface shaped and dimensioned to engage the underside of the sink and a second end with a central support body therebetween;
>
> the second end of the support bar includes a support beam extending therealong from the central support body to *a terminal point on the support bar farthest from the first end of the support bar* and a back surface cap member, the support beam lying in a plane that is perpendicular to a back side of the support bar [] as

defined by the back surface cap member, and extending through the back surface cap member are a plurality of screw holes formed along the length of the second end of the support bar for the passage of a mounting screw;

wherein with the first end of the support bar pressed against the underside of the sink, the second end of the support bar is rigidly secured to the wall of the cabinet.

Given      _____
Given as Modified      _____
Denied      _____
Withdrawn      _____

## AUTHORITY

35 U.S.C. § 112; *Source Search Technologies, LLC v. LendingTree, LLC*, 588 F. 3d 1063, 1075 (Fed. Cir. 2009); *Computer Docking Station Corp. v. Dell, Inc*., 519 F. 3d 1366, 1373 (Fed. Cir. 2008); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Amazon. com, Inc. v. Barnesandnoble.com, Inc.,* 239 F. 3d 1343, 1351 (Fed. Cir. 2001); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831 (2015); *Phillips v AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc)*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc)*, *aff'd*, 517 U.S. 370 (1996).

## REQUESTED JURY INSTRUCTION <u>NO. 3</u>
## INFRINGEMENT GENERALLY

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Cinclips alleges that Z Keepers' U-Mounts product infringes independent claims 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, and 20 of the '609 Patent. In deciding the issue of infringement, you must compare Z Keepers' U-Mounts product to the claims of the patent-in-suit when making your decision regarding infringement.

You have heard evidence about both Cinclips' patented mounting driver and Z Keepers' accused product. In deciding the issue of infringement, you must compare Z Keepers' accused product to the claims of the patents-in-suit when making your decision regarding infringement.

A patent may be infringed directly or indirectly. Direct infringement results if the accused product is covered by at least one claim of the patent. Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

|                   |            |
|-------------------|------------|
| Given             | _____ |
| Given as Modified | _____ |
| Denied            | _____ |
| Withdrawn         | _____ |

## **AUTHORITY**

35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 134 S. Ct. 2111 (2014); *Merial Ltd. v. CIPLA Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

# REQUESTED JURY INSTRUCTION NO. 4
## DIRECT INFRINGEMENT

Z Keepers is liable for directly infringing Cinclips' patent if you find that Cinclips has proven that it is more likely than not that Z Keepers made, used, imported, offered to sell, or sold the invention defined in at least one claim of the patent-in-suit.

Someone can directly infringe a patent without knowing of the patent or without knowing that what he or she is doing is an infringement of the patent. He or she also may directly infringe a patent even though he or she believes in good faith that what he or she is doing is not an infringement of any patent.

## LITERAL INFRINGEMENT

To determine literal infringement, you must compare the accused product with each claim that Cinclips asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Z Keepers' U-Mounts product includes each and every element in that patent claim. If Z Keepers' U-Mounts product does not contain one or more elements recited in a claim, Z Keepers does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually. The accused product should be compared to the invention described in each patent claim it is alleged to infringe. The same element of the accused product may satisfy more than one element of a claim.

## DOCTRINE OF EQUIVALENTS

If you decide that Z Keepers' product does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that product infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are equivalent to those requirements of the claim that are not literally present in the product. If the product is missing an equivalent part to even one element of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an equivalent part to that individual claim requirement that is not literally present in the product.

An equivalent of an element is a component that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement.  The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents.  Further, the same element of the accused product may satisfy more than one element of a claim.

| | |
|---|---|
| Given | _____ |
| Given as Modified | _____ |
| Denied | _____ |
| Withdrawn | _____ |

## AUTHORITY

35 U.S.C. § 271(a); *Global-Tech Appliances, Inc., v. SEB, S.A.*, 131 S.Ct. 2060 , n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Intellectual Sci. & Tech. v. Sony Elect.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009); *Hutchins v. Zoll Med. Corp.*, 492 F. 3d 1377, 1380 (Fed. Cir. 2007); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481-82 (Fed. Cir. 1984); *Graver Tank & Mfg. Co, v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 325 (Fed. Cir. 1985).

## REQUESTED JURY INSTRUCTION <u>NO. 5</u>
## INFRINGEMENT OF A DEPENDENT CLAIM

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. Claims 8 and 16 are independent claims. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. Claims 9, 10, 11, 12, and 13 are dependent claims that refers to Claim 8. Claims 17, 18, 19, and 20 are dependent claims that refer to Claim 16. A dependent claim includes all of the elements recited in the dependent claim, as well as all of the elements of the independent claim to which it refers.

|                   |              |
|-------------------|--------------|
| Given             | _____  |
| Given as Modified | _____  |
| Denied            | _____  |
| Withdrawn         | _____  |

## <u>AUTHORITY</u>

*Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (citing *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 & n.10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

**REQUESTED JURY INSTRUCTION <u>NO. 6</u>**
**INDUCED INFRINGEMENT**

In this case, Z Keepers is accused of inducing its customers to directly infringe Cinclips' patent, either literally or under the doctrine of equivalents. To prove this allegation, Cinclips must establish it is more likely than not that:

1. Z Keepers aided, instructed, or otherwise acted with the intent to cause acts by its customers that would constitute direct infringement of the patent-in-suit;
2. Z Keepers knew of the patent-in-suit, or showed willful blindness to the existence of the patent-in-suit, at that time;
3. Z Keepers knew, or should have known, that its actions would result in infringement of at least one claim of the patent-in-suit; and
4. Z Keepers' customers infringed at least one patent claim of the patent-in-suit.

To find willful blindness: (1) Z Keepers must have subjectively believed that there was a high probability that a patent existed covering the accused product; and (2) Z Keepers must have taken deliberate actions to avoid learning of the patent.

To find that Z Keepers induced infringement, it is not necessary to show that Z Keepers has directly infringed as long as you find that someone has directly infringed. However, if there is no direct infringement by anyone, Z Keepers cannot have induced infringement of the patent.

| | |
|---|---|
| Given | _____ |
| Given as Modified | _____ |
| Denied | _____ |
| Withdrawn | _____ |

<u>**AUTHORITY**</u>

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc., v. SEB, S.A.*, 563 U.S. ___, 131 S. Ct. 2060 (2011); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

**REQUESTED JURY INSTRUCTION <u>NO. 7</u>**
**CONTRIBUTORY INFRINGEMENT**

Cinclips asserts that Z Keepers has contributed to infringement by another person. To establish contributory infringement, Cinclips must prove that it is more likely than not that Z Keepers had knowledge of the patent, and that:

1.  Someone other than Z Keepers has directly infringed the patents-in-suit;
2.  Z Keepers sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing process;
3.  The component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;
4.  The component or apparatus constitutes a material part of the patented invention; and
5.  Z Keepers knew that the component was especially made or adapted for use in an infringing product.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

To find contributory infringement, it is not necessary to show that Z Keepers has directly infringed as long as you find that someone has directly infringed. However, if there is no direct infringement by anyone, Z Keepers cannot have contributed to the infringement of the patent.

Given                         _____
Given as Modified    _____
Denied                       _____
Withdrawn                _____

**<u>AUTHORITY</u>**

35 U.S.C. § 271(c); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012); *R+L Carriers, Inc. v. DriverTech LLC*, 2012 U.S. App. LEXIS 11519 at *27-28 (Fed. Cir. June 7, 2012); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1353 (Fed. Cir. 2010); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

## REQUESTED JURY INSTRUCTION <u>NO. 8</u>
## WILLFUL INFRINGEMENT

If you find that it is more likely than not that Z Keepers infringed Cinclips' patent, either literally or under the doctrine of equivalents, then you must also determine if this infringement was willful. Willfulness must be proven that it is highly probable that:

1. Z Keepers was aware of the patent-in-suit,
2. Z Keepers acted despite an objectively high likelihood that its actions infringed a valid patent, and
3. This objectively high likelihood of infringement was either known or so obvious that it should have been known to Z Keepers.

In making the determination of whether Z Keepers acted despite an objectively high likelihood that its actions infringed a valid patent, you may not consider Z Keepers' actual state of mind.

| | |
|---|---|
| Given | _____ |
| Given as Modified | _____ |
| Denied | _____ |
| Withdrawn | _____ |

## <u>AUTHORITY</u>

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.,* 682 F.3d 1003, 1006-08 (Fed. Cir. 2012); *i4i Ltd. P'Ship. v. Microsoft Corp.*, 598 F.3d 831, 859-60 (Fed. Cir. 2010); *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

## REQUESTED JURY INSTRUCTION <u>NO. 9</u>
## AFFIRMATIVE DEFENSE- INVALIDITY INTRODUCTION

Z Keepers contends that the asserted claims of the patent-in-suit are invalid. Z Keepers must prove that it is highly probable that each asserted claim is invalid. Z Keepers contends that the claims of the patent-in-suit are invalid as: (1) obvious to one of ordinary skill in the art; and (2) containing claims that are indefinite. You must determine whether each of Cinclips' claims are invalid.

## PRIOR ART DEFINED

Prior art includes any of the following items received into evidence during trial:

1. Any product that was publicly known or used by others in the United States before the patented invention was made;
2. Patents that issued more than one year before the filing date of the patent, or before the invention was made;
3. Publications having a date more than one year before the filing date of the patent, or before the invention was made;
4. Any product that was in public use or on sale in the United States more than one year before the patent was filed;
5. Any product that was made by anyone before the named inventors created the patented product where the product was not abandoned, suppressed, or concealed.

When a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application, which resulted in the issued patent, that party's ability to satisfy its highly probable evidence burden may be more difficult.

Concerning the '609 Patent, Z Keepers has set forth the following prior art references:

1. Furring Strip;

2. U.S. Application 12/475,599; U.S. Publication No. 2010-0301175 A1, published on December 2, 2010;

3. U.S Patent No. 4,047,340, issued to Witte on September 13, 1977;

4. ABS plastic I-beam from Kit Kraft; and

5. Images from a prior art I-beam article published by Wikipedia, on or before July 20, 2012.

Given                  _____
Given as Modified     _____
Denied               _____
Withdrawn          _____

## AUTHORITY

*Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. __, 131 S. Ct. 2238, 2251 (2011); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005); 35 U.S.C. § 102.

**REQUESTED JURY INSTRUCTION <u>NO. 10</u>**
**AFFIRMATIVE DEFENSE- ANTICIPATION**

Z Keepers contends that the claims of the patents-in-suit are anticipated by prior art references. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. To prove anticipation, Z Keepers must prove that it is highly probably that the claimed invention is not new.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior art reference.

Given          _____
Given as Modified    _____
Denied         _____
Withdrawn     _____

**AUTHORITY**

*Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347-1348 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

## REQUESTED JURY INSTRUCTION <u>NO. 11</u>
## AFFIRMATIVE DEFENSE- OBVIOUSNESS

Z Keepers contends that claims of the patents-in-suit are invalid because the claimed invention is "obvious." Z Keepers must prove that obviousness is highly probable.

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In deciding obviousness, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

The following factors must be evaluated to determine whether Z Keepers has established that the claims in the patents-in-suit are obvious:

1. The scope and content of the prior art relied upon by Z Keepers;
2. The difference or differences, if any, between each claim of the patents-in-suit that Z Keepers contends is obvious and the prior art;
3. The level of ordinary skill in the art at the time the patents-in-suit were invention; and
4. Additional considerations, if any, that indicate that the invention was obvious or not obvious.

## SCOPE AND CONTENT OF THE PRIOR ART

The prior art that you consider for anticipation purposes is also prior art for obviousness purposes. You must determine what is the prior art that may be considered in determining whether the patents-in-suit are obvious. A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.

## DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the

invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.  You may also consider whether the problem or need was known, the possible approaches to solving the problem or addressing the need were known and finite, and the solution was predictable through use of a known option.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.  Again, you must undertake this analysis separately for each claim that Z Keepers contends is obvious.

## LEVEL OF ORDINARY SKILL

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in data encryption.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1. The level of education and experience of persons actively working in the field at the time of the invention, including the inventor;
2. The types of problems encountered in the art at the time of the invention; and
3. The sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

## FACTORS INDICATING NONOBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.

1. Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?
2. Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?
3. Did others try, but fail, to solve the problem solved by the claimed invention?
4. Did others copy the claimed invention?
5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?
6. Did others in the field, or Z Keepers praise the claimed invention or express surprise at the making of the claimed invention?
7. Did others accept licenses under the patents-in-suit because of the merits of the claimed invention?

|  |  |
|---|---|
| Given | _____ |
| Given as Modified | _____ |
| Denied | _____ |
| Withdrawn | _____ |

## **AUTHORITY**

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.,* 678 F.3d 1280, 1296 (Fed. Cir. 2012); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

**REQUESTED JURY INSTRUCTION <u>NO. 12</u>**
**DAMAGES GENERALLY**

If you find that the accused product infringes any of the claims of the patent-in-suit, and that those claims are not invalid, you must determine the amount of damages to be awarded Cinclips for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not consider damages in your deliberations.

Cinclips must prove each element of its damages – including the amount of the damages – by a preponderance of the evidence, which means more likely than not.

If proven by Cinclips, damages must be in an amount adequate to compensate Cinclips for the infringement. The purpose of a damage award is to put Cinclips in about the same financial position it would have been in if the infringement had not happened. But the damage award cannot be less than a reasonable royalty.

**DATE DAMAGES BEGIN**

The date that Cinclips first notified Z Keepers of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. Cinclips must prove that it is more likely than not that Z Keepers actually was notified of the claim for patent infringement as of the date alleged by Cinclips.

Cinclips can give notice of its patents by notifying Z Keepers with a specific claim that the U-Mounts infringed the '609 Patent. This type of notice starts from the date Z Keepers received the notice. If you find that Cinclips, before filing this lawsuit, did not properly notify Z Keepers with a specific charge that the U-Mounts infringed, then Cinclips can only recover damages for infringement that occurred after it sued Z Keepers on April 29, 2016.

In this case Cinclips alleges that it provided Z Keepers with notice of its claim of patent infringement prior to the filing of this lawsuit, by a txt message on January 28, 2015, by a letter dated March 18, 2016, and otherwise.

| | |
|---|---|
| Given | _____ |
| Given as Modified | _____ |
| Denied | _____ |
| Withdrawn | _____ |

**<u>AUTHORITY</u>**

35 U.S.C. § 287(a); *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373-74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v.*

*Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Powell v. Home Depot U.S.A., Inc.,* 663 F.3d 1221, 1238 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 868 (Fed. Cir. 2010); *Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1325 (Fed. Cir. 2009); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.,* 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).

# REQUESTED JURY INSTRUCTION <u>NO. 13</u>
## REASONABLE ROYALTY DAMAGES

The patent law provides that the amount of damages that Z Keepers should pay Cinclips for infringing Cinclips' patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Cinclips' invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Cinclips and Z Keepers. Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license.

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1.   Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.
2.   The rates paid by Z Keepers to license other patents comparable to the patent-in-suit.
3.   The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.
4.   The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.
5.   The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.
6.   The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.
7.   The duration of the patent-in-suit and the term of the license.
8.   The established profitability of the product made under the patent-in-suit; their commercial success; and their current popularity.
9.   The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.
10.   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.   The extent to which Z Keepers has made use of the invention; and any evidence that shows the value of that use.

12.   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.   The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.   The opinion testimony of qualified experts, if any.

15.   The amount that a licensor and a licensee (such as Z Keepers) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.   Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## TIMING

Although the relevant date for the hypothetical license negotiation is just before the infringement began, you may consider any actual profits made by Z Keepers due to its infringement and any commercial success of the patented invention or the infringing products after that date. You may only consider this information, however, if those sales and profits were foreseeable just before the infringement began.

Given                              _____
Given as Modified          _____
Denied                           _____
Withdrawn                    _____

## **AUTHORITY**

35 U.S.C. § 284; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) overruled on other grounds by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir 2004); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869-70 (Fed. Cir. 2003); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Wang Labs., Inc. v.*

*Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); Studiengesellschaft Kohle, mbH v. Dart Indus., Inc., 862 F.2d 1564, 1570-72 (Fed. Cir. 1988); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262 (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).