**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| CINCLIPS, LLC,<br>    a Georgia Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>Z KEEPERS, LLC,<br>    a Florida Limited Liability Company,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 8:16-cv-01067-JSS |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff, Cinclips, LLC ("Cinclips" or "Plaintiff") submits its trial brief in accordance with the Amended Pretrial Order [Dkt. 101].

### I.   OVERVIEW

Dow Blaine ("Blaine") is the founder and owner of Cinclips.  He invented a mounting driver for undermounting a sink to a support surface.  He has been awarded a number of patents on this invention, including U.S. Patent 9,133,609 ("'609 Patent"), the patent at issue.  Blaine has been in the stone industry for over thirty-two (32) years.  A regular issue that arose in the stone industry is that undermounted sinks would fall due to the lack of support.  In 2013, Blaine set out to solve this problem, which resulted in the '609 Patented invention.

While conducting the research that resulted in the '609 Patent, Blaine disclosed his thought processes and approach to Dimitri Kelner and Mr. Kelner's wife, who then disclosed this approach to David Smith.  At the time, Smith the founder and owner of Defendant, Z Keepers, LLC ("Z Keepers" or "Defendant"), did not have any products.  Z Keepers did eventually go to market with

1

a clamp used for securing a sink to stone.  This product was then and remains today Z Keepers' principal product, accounting for essentially all of its sales.

Undermounting a sink fully beneath the surface of a countertop has become very popular based upon the aesthetics of a countertop that is unencumbered with the rim of a sink.  ['609 Patent Abstract, Dkt. 33-1, p. 1].  Securing sinks in this manner is very limited as one cannot simply screw the sink to the underside of the countertop.  *Id*.  The '609 Patent solves this dilemma by providing a mounting driver for undermounting a sink to a support surface.

Critical to the mounting driver's functionality is a support bar, identified as item 16 below:



FIG. 5

FIG. 6

FIG. 7

The support bar, which features an I-beam construction, is "shaped and dimensioned for positioning between an underside of the sink and a wall of a cabinet at an angular orientation

relative to the wall." ['609 Patent Abstract, Dkt. 33-1, p. 1].  The support bar includes a first and second end, and "the second end of the support bar includes a support beam extending therealong from the central support body (50) to a distal end and a back-surface cap member."  [*Id*. at 8:63–65].  With the first end of the support bar pressed against the underside of the sink, the second end of the support bar is secured to the wall of a cabinet.  When installed correctly, the invention can support up to 550 pounds of weight.  This strength is owed to the I-beam construction, which allows the support bar to resist both bending and shear forces.



FIG. 1

Some time later, Smith and Blaine had a falling out.  Smith then went to market with his U-Mounts product, his first and only bracketed undermount sink support.  Blaine demanded Smith stop.  Smith refused.  Notwithstanding that Smith makes essentially no money from his U-Mounts product, he refuses to stop selling them.  Partway through this litigation, Z Keepers redesigned its

U-Mounts product to remove 2 components: (1) the curved first end; and (2) a third screw hole in the second end.  Z Keepers still uses pictures of its original U-mounts in offering to sell U-mounts. Cinclips seeks damages from Z Keepers for its infringement of Cinclips' technology.

## II.   ADMITTING FACTS REQUIRING NO PROOF AT TRIAL[1]

1.    Plaintiff is Georgia Limited Liability Company with its principal place of business in Georgia.

2.    Defendant is a Florida Limited Liability Company.

3.    Plaintiff is the owner of all right, title, and interest in the '609 Patent.

4.    The '609 Patent was granted on September 15, 2015, naming inventor Dow Blaine for an invention entitled "Mounting Driver for Undermounted Sinks."

5.    Plaintiff has recorded its ownership of the '609 Patent with the United States Patent and Trademark Office.

6.    U.S. Patent No. 9,637,898 ("the '898 Patent") was granted on May 2, 2017, naming inventor Dow Blaine for an invention entitled "Mounting Driver for Undermounted Sinks."

7.    Plaintiff has recorded its ownership of the '898 Patent with the United States Patent and Trademark Office.

8.    Dow Blaine is the inventor of the '609 Patent.  U.S. Patent Application No. 14/095,461 ("the '461 application") was filed on December 3, 2013, and issued as the '609 Patent on September 15, 2015.

9.    Dow Blaine is the inventor of the '898 Patent.  U.S. Patent Application No. 15/072,683 ("the '683 application") was filed on March 17, 2016 and issued as the '898 Patent on May 2, 2017.

---

[1] This section is taken from the parties' prior pretrial statements.  *See* [Dkt. 70] at 10-12; [Dkt. 72] at 10-12

10.    The '683 application is a continuation of U.S. Patent Application No. 14/812,424 ("the '424 application"), filed July 29, 2015, now U.S. Pat. No. 9,290,919 ("the '919 Patent"), which is a continuation in part of the '461 application.

11.    Plaintiff sent Defendant a letter informing it of the '609 Patent on March 18, 2016, which Defendant received.

12.    Plaintiff sent Defendant a letter informing it of the '898 Patent on May 13, 2017, which Defendant received.

13.    Dow Blaine sent David Smith a text message on January 28, 2015.  David Smith replied to the text message.

14.    The '461 application that matured into the '609 Patent published on April 23, 2015.


Defendant did not agree to the following facts in the parties' prior pre-trial submissions, but Defendant did agree to the respective facts in discovery.  Thus, Cinclips believes no proof is necessary for the respective facts.

15.    Defendant offers for sale U-Mounts.  *See* Exhibit A, Defendant's Response to First Requests for Admission, Admission No. 2.

16.    Defendant sells U-Mounts.  *See* Exhibit A, Defendant's Response to First Requests for Admission, Admission No. 3.

17.    Defendant imports U-Mounts.  *See* Exhibit A, Defendant's Response to First Requests for Admission, Admission No. 5.

## III.    TRIAL BRIEF WITH CITATIONS OF AUTHORITY AND WITH ARGUMENT OF THE DISPUTED ISSUES LIKELY TO ARISE AT TRIAL[2]

---

[2] This section is taken from the "Agreed Applicable Principles of Law" section of the parties' prior pretrial statements.  *See* [Dkt. 70] at 12-14; [Dkt. 72] at 12-14

Plaintiff has the burden to prove infringement by a preponderance of the evidence, which requires proving that infringement was more likely than not to have occurred. *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326 (Fed. Cir. 2005).

An infringement analysis is a two-step process. *See e.g. Schindler Elevator Corp. v. Otis Elevator Corp.*, 593 F.3d 1275, 1281 (Fed. Cir. 2010). The first step is the construction of the patent claims at issue. *Id*. The second step is a comparison of the allegedly infringing product to the construed claims. *Id*. A party is liable for patent infringement even if it infringes only a single patent claim. *Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).

Infringement is not avoided merely by the accused device having extra parts, ingredients, or steps, respectively, to those claimed. *Dow Chem. Co. v. Sumitomo Chem. Co.,* 257 F.3d 1364, 1380-81 (Fed. Cir. 2001); *Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 811 (Fed. Cir. 1999). An accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation. *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1343 (Fed. Cir. 2001).

A plaintiff may seek to prove literal infringement or infringement under the doctrine of equivalents. *Pro Tech Monitoring, Inc. v. Satellite Tracking of People, LLC,* No. 808-CV-1455-T-30AEP, 2010 WL 55567, at *5 (M.D. Fla. Jan. 4, 2010). "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Id*. "Under the doctrine of equivalents, 'a product … that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product … and the claimed elements of the patented invention." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem., Co.*, 520 U.S. 17, 21 (1997)). "Under the insubstantial

differences test, '[a]n element in the accused device is equivalent to a claim limitation only if the only differences between the two are insubstantial.'" *Voda v Codis Cop.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (quoting *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)).   Alternatively, equivalence may be shown "by showing on an element-by-element basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product, often referred to as the function-way-result test." *Intendis GMBH v. Glenmark Pharmaceuticals Inc.* 822 F.3d 1355, 1360-61 (Fed. Cir. 2016).

In some cases of infringement, the plaintiff is entitled to enhanced damages due to willful infringement.   Assessing enhanced damages is a two-step process: (1) fact finder must make factual finding of willful infringement; and (2) the court then decides if the totality of the circumstances justifies enhanced damages.   *See Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2009 WL 3064800 at *2 (M.D. Fla. Sept. 22, 2009) (Covington, J.)

A patent is presumed valid.   35 U.S.C. § 282.   Defendant has the burden of establishing invalidity through clear and convincing evidence.   *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).

To establish invalidity on obviousness grounds, Defendant must demonstrate that the subject matter of the Asserted Claims "would have been obvious at the time the invention was made to a person of ordinary skill in the art to which the subject matter of the invention pertains." 35 U.S.C. § 103(a).   In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), the Court set out a framework for applying the statutory language of 35 U.S.C. § 103:

> Under § 103, the scope and content of the prior art are to be
> determined; differences between the prior art and the claims at issue
> are to be ascertained; and the level of ordinary skill in the pertinent

art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

*Id*. at 17-18. "While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls." *KSR Int'l. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007).

Obviousness requires more than mere conclusory allegations: "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbot Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (citations and quotations omitted). Analyzing obviousness is a two-step inquiry. *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003). The first step is a proper construction of the claims by the court. *Id*. The second step is a comparison of the construed claims to the prior art. *Id*.

To qualify as prior art, a reference must have been patented, described in a printed publication, or in public use, on sale, or otherwise available to the public anywhere in the world before the effective filing date of the challenged patent. *See* 35 U.S.C. § 102. A disclosure shall not be prior art if the subject matter disclosed was obtained directly or indirectly from the inventor of the challenged patent. *Id*.

## IV. THE COURT'S CLAIM CONSTRUCTION

The parties submitted a number of claim construction disputes to the Court for resolution. *See* [Dkts. 33, 35, and 36]. Z Keepers sought construction of eight separate claim terms. Cinclips opposed each construction, arguing that no construction was necessary. The Court agreed with Cinclips for all claim terms except for one. *See* [Dkt. 82]. The Court also accepted a separate claim construction that the parties agreed to. Cinclips accuses Z Keepers of infringing Claims 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, and 20. Claims 8 and 16 are the only independent claims at issue. The Court's construction of Claim 8 (with construed terms in italics) is below:

A one-piece mounting driver for undermounting a sink to a support surface, comprising:

A support bar shaped and dimensioned for positioning between an underside of the sink and a wall of a cabinet at an angular orientation relative to the wall, the support bar including a first end having a sink engaging member with a curved surface shaped and dimensioned to engage the underside of the sink and a second end with a central support body therebetween;

the second end of the support bar includes a support beam extending therealong from the central support body to *a terminal point on the support bar farthest from the first end of the support bar* and a back surface cap member, the support beam lying in a plane that is perpendicular to a back side of the support bar [] as defined by the back surface cap member, and extending through the back surface cap member are a plurality of screw holes formed along the length of the second end of the support bar for the passage of a mounting screw;

wherein with the first end of the support bar pressed against the underside of the sink, the second end of the support bar is rigidly secured to the wall of the cabinet.

[Dkt. 82] at 8-9.

## V.    ISSUES OF FACT TO BE LITIGATED

1.      Whether Defendant infringes the '609 Patent through any of its alleged activities with respect to the U-Mounts products.

2.      If Defendant infringes the '609 Patent, whether Defendant's infringement was willful.

3.      Whether the Asserted Claims of the '609 Patent are invalid for obviousness over the prior art under 35 U.S.C. § 103.

4.      Whether the Asserted Claims of the '609 Patent are invalid for inadequacy of written description or indefiniteness under 35 U.S.C. § 112(a).

5.      If any claim of the '609 Patent is found to be infringed and not invalid, what damages, if any, Plaintiff is entitled to recover from Defendant.

6.      Whether Defendant has made 55,000 U-Mounts.

7.      Whether Defendant has imported 55,000 U-Mounts.

8.      Whether Defendant has sold 53,225 U-Mounts.

9.      Whether Defendant has given away 1,745 U-Mounts.

10.     Whether Defendant's revenues from sales of U-Mounts, is $39,045.63.

## VI.   MOTIONS OR OTHER MATTERS WHICH REQUIRE ACTION BY THE COURT

1.      Defendant's Motion to Adopt the Court's Analysis of the Specification for Claim 16's "Angularly Oriented" Term as its Construction of the Term and the Basis for its Jury Instruction [Dkt. 103].

2.      Defendant's Motion in Limine to Preclude Plaintiff from Introducing Any Evidence of the '898 Patent [Dkt. 105].

September 17, 2018

> */s/ Woodrow H. Pollack*
> Woodrow H. Pollack
> Florida Bar No. 26802
> Shutts & Bowen, LLP
> 4301 W Boy Scout Blvd, Suite 300
> Tampa, FL 33607
> (813) 463-4894
> (813) 227-8234 (facsimile)
> wpollack@shutts.com
> *Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2018 a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

> */s/ Woodrow H. Pollack*
> Woodrow H. Pollack