UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CINCLIPS, LLC,<br>    a Georgia Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>Z KEEPERS, LLC,<br>    A Florida Limited Liability Company<br><br>Defendant. | Case No. 8:16-cv-01067-SDM-JSS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

This was a run-of-the-mill patent infringement case. It did not approach, let alone cross the barrier of "exceptional" cases standing out from the rest to warrant the extraordinary remedy of an attorney fee award. Z Keepers' request for such fees (which substantively fails as well), must be denied. Concerning Z Keepers' requests for costs, Cinclips is the proper prevailing party, thus Z Keepers is not entitled to any such award.

**I)  BACKGROUND**

On April 29, 2016, Cinclips initiated this lawsuit against Z Keepers, Inc.'s ("Z Keepers") alleging infringement of U.S. Patent No. 9,133,609 (the "609 Patent"). *See* [Dkt. 1] Z Keepers sought dismissal on the pleadings. That motion was denied. Z Keepers then missed or extended essentially every deadline in the litigation. Cinclips was forced to engage in motion practice to get Z Keepers to produce certain responsive discovery. *See* [Dkt. 42]. Z Keepers then produced relevant documents after the close of discovery requiring additional motion practice to permit Cinclips to depose Z Keepers. *See* [Dkt. 53]. Z Keepers then relied on surprise witness testimony in opposition to Cinclips' summary judgment motion. *See* [Dkt. 73].

1

Following a four-day trial and a jury verdict, the jury came back with a split decision. On Cinclips' claim of infringement, the jury found the accused product to be noninfringing. On Z Keepers' claims of invalidity, the jury found the patent claims to be not invalid. Nothing in the history of this case suggests Cinclips' claims were unreasonable or groundless. The trial was conducted properly. The jury was asked to review the accused product and compare it to the asserted claims. The jury was also asked to review the asserted claims and the patent-at-issue and decide whether or not the claimed invention was invalid. Nothing improper was done. This case was not exceptional, and Z Keepers' motion should be denied.

**II)     Cinclips Is the Prevailing Party, Thus Z Keepers May Not Recover Its Costs**

The parties do not disagree on the law, but rather the application of it. Federal Circuit precedent governs the determination of who is the prevailing party, and there must be only one. *See Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010).

Here, like in *Shum*, both parties prevailed on certain claims and failed on others. Cinclips succeeded in fending off three separate attacks on the validity of Cinclips' patent. Specifically, Z Keepers sought to invalidate the patent-at-issue under the theory that: (1) the patent's claims were obvious in light of certain prior art; (2) the patent specification did not adequately describe the claimed invention; and (3) Cinclips committed inequitable conduct on the U.S. Patent and Trademark Office in securing the patent-at-issue. Had Z Keepers prevailed on any single one of those theories, Cinclips' patent would be dead. Cinclips would not be able to assert the patent against any infringer.

Worse still for Cinclips, had Z Keepers prevailed in its inequitable conduct defense, Cinclips' entire patent portfolio would be at risk. Had Z Keepers prevailed in its argument that the asserted claims were invalid, the non-asserted claims would not have been impacted (and thus would have remained enforceable against infringers). But an inequitable conduct claim

2

works differently. Had Z Keepers prevailed in its inequitable conduct claim, the entire patent would be dead. *See In re Clark*, 522 F.2d 623, 626 (CCPA 1975) (Inequitable conduct "goes to the patent right as a whole, independently of particular claims."). *See generally* Manual of Patent Examining Procedures § 2016 ("A finding of 'fraud,' 'inequitable conduct,' or violation of duty of disclosure with respect to any claim in an application or patent, renders all the claims thereof unpatentable or invalid.") attached as Exhibit A. *See also eSpeed, Inc. v. Brokertec USA, L.L.C.,* 417 F. Supp. 2d 580, 595 (D. Del. 2006), *aff'd,* 480 F.3d 1129 (Fed. Cir. 2007) ("the inequitable conduct committed during the prosecution of the '733 application, which matured into the '974 patent, infects the '580 patent, rendering it unenforceable.")

The patent-at-issue in this case is U.S. Patent No. 9,133,609. Cinclips was also awarded a number of additional patents, which are related to the '609 patent, namely U.S. Patent Nos. 9,055,846; 9,290,919; and 9,637,898 (the "Other Cinclips Patents"). Because Z Keepers failed in its inequitable conduct challenge, the Other Cinclips Patents have not been "infect[ed]" with any unenforceability concerns. Had Z Keepers succeeded in this attack, the Other Cinclips Patents would be suspect at best. This relief on Z Keepers' claim of inequitable conduct is significant, and materially alters the relationship between the parties. As the Court is aware, Cinclips has identified the '898 Patent as a separate patent that Z Keepers bears potential liability for infringement. But because the enforceability of the '898 Patent was at issue, Cinclips bore increased risk if it pursued such a claim during the pendency of the present litigation. If Z Keepers had prevailed on its inequitable conduct challenge, its most likely next step would be to assert that the '898 Patent was "infect[ed]" with the same unenforceability issues rendering asserting the '898 Patent particularly egregious opening up a potential concern of an award of attorney's fees under the exceptional standard, as asserting an unenforceable patent could rise to

3

the high level of exceptional patent case. But given Z Keepers' failure to prove its inequitable conduct claim, Cinclips is now able to assert the '898 Patent against Z Keepers without fear that the '898 Patent is somehow infected with inequitable conduct purportedly committed in a different patent application. Better still for Cinclips, Z Keepers is likely precluded through *res judicata* from asserting the same invalidity positions against the '898 Patent.[1] This *strengthens* the case of Z Keepers' liability under the '898 Patent because its invalidity attacks have been refused. This directly benefits Cinclips for each of the Other Cinclips Patents.

The jury did not find infringement of the asserted claims against Z Keepers' original product. Z Keepers argues that it "avoided significant monetary liability" because of this judgment. But Cinclips never pursued "significant monetary liability." As shown at the trial, Cinclips sought, at most, $3.00 per unit. *See* Tr. Transcript at page 95, lines 12-14. And Z Keepers had made very few accused units. The total damages at issue were small. Z Keepers' reliance on *Shum* for this proposition is particularly revealing, as there the defendants avoided monetary liability of $409 million. Cinclips knew this was a small damages case all along and litigated as such. Z Keepers is not the prevailing party. As such, it is not entitled to its costs.

<u>Z Keepers Seeks Inappropriate Costs</u>

While Cinclips maintains that it is the prevailing party, should the Court rule otherwise, the costs requested are not all awardable. "Whether an award of costs is reasonable is determined under the law of the regional circuit." *Shum*, 629 F.3d at 1370. In the Eleventh Circuit, Fed. R. Civ. P. 54(d) presumes costs are to be awarded to a prevailing party, but the

---

[1] Cinclips has not decided whether or not to pursue the '898 Patent against Z Keepers for a number of reasons. First, Cinclips is entitled to six (6) years of damages from any infringement of the '898 Patent. *See* 35 U.S.C. § 286. Second, Cinclips understood Z Keepers had manufactured two (2) versions of the accused product, namely the initial design with three (3) holes and a curved first end and the modified design having two (2) holes and a squared first end. During the trial, however, Z Keepers disclosed that it had manufactured yet another version of the accused product, namely one having two (2) holes and a curved first end. Cinclips is analyzing its claims in light of this development.

court is vested with discretion to decide otherwise. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc). Courts are limited to taxing costs enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).

Notably, Z Keepers did not submit a bill of cost, using the standard AO 133 form. Instead, it appears Z Keepers relies on the declaration of Mr. Smith. *See* [Dkt. 165]. But that declaration does not meet the statutory requirements. Specifically, 28 U.S.C. § 1924 requires particular verification of a bill of cost:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

Z Keepers has not provided proper evidence that the requested costs were necessarily incurred. *See also Reece v. Bank of New York Mellon*, 760 F.3d 771, 779 (8th Cir. 2014) ("Because the statute leaves no room for discretion, Mellon is prohibited from receiving an award of costs.")

Z Keepers also did not attempt to associate each requested cost with a corresponding statutory basis for awarding such a cost, so Cinclips can only address them briefly. For example, Z Keepers seeks a three (3) night hotel stay for a witness that testified for less than 15 minutes. And that hotel stay was at the Don Cesar, a luxury hotel located far from both the airport and the courthouse. Z Keepers seeks costs for preparing trial binders, but drastically reduced the number of exhibits it actually offered during the trial, thus it is hard to see how the entirety of the trial binders were necessary for the case. Z Keepers also seeks court-ordered mediation fees, but these fees are similarly not recoverable. *See* 28 U.S.C. § 1920; *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1346 (11th Cir. 2006), *vacated and superseded on reconsideration on other grounds*, 475 F.3d 1239 (11th Cir. 2007).

**III)     This Was Not An Exceptional Patent Infringement Case**

In the United States, the general rule is that prevailing litigants are not entitled to attorneys' fees. The rationale behind this "American Rule" against fee-shifting is to encourage the resolution of disputes and allow a party its day in court without fear of penalty for prosecuting or defending a lawsuit. *See Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 724 (1982). This rule applies to all cases, with limited exceptions. In patent cases, a prevailing party may recover "reasonable attorney fees" only "in ***exceptional*** cases." 35 U.S.C. § 285 (emphasis added).

In 2014, the Supreme Court clarified how courts should determine whether a particular case is "exceptional" within the meaning of the Patent Act. *See generally Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) (discussing 35 U.S.C. § 285). The Court confirmed that absent independently sanctionable conduct, an "exceptional" case "stands out from the others" due to either the substantive strength of a litigant's position or the unreasonable manner in which the case was litigated. *Id*. at 1756 (citations omitted). But the Court rejected the "rigid" test outlined by the Federal Circuit in *Brooks Furniture* in favor of a more flexible standard aligned with the language of the statute. *Id.* at 1756-58 (rejecting *Brooks Furniture Manufacturing v. Dutailier International*, 393 F.3d 1378 (2005)).

Giving the term its ordinary meaning, the Supreme Court interpreted the word "exceptional" to mean "uncommon," "rare," "unusual," or "special." *Octane Fitness*, 134 S. Ct. at 1756 (citations omitted). To determine whether a particular patent case is sufficiently "rare" or "unusual" to warrant fee-shifting, a court must consider the totality of the circumstances. *Id.* at 1751. Specifically, a court may consider "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6

6

(citation omitted); *see also S.C. Johnson & Son, Inc. v. Carter- Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) ("The trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser.")

If a court determines that a case is "exceptional," it must then decide whether to award any fees pursuant to Section 285. *See Octane Fitness*, 134 S. Ct. at 1756; *see also S.C. Johnson*, 781 F.2d at 201 ("Even an exceptional case does not require in all circumstances the award of attorney fees. Many factors could affect this result."); *Flexiteek Ams., Inc. v. Plasteak, Inc.*, No. 08-60996, 2013 U.S. Dist. LEXIS 18057, at *7 (S.D. Fla. Feb. 11, 2013) (finding case exceptional in view of a discovery violation but denying § 285 fee request because misconduct did not result in prejudice or delay). To award fees, a court must find that a case is so rare and unusual that it is "grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (discussing legislative purpose behind § 285 and holding district court abused its discretion in awarding fees (internal quotations and citation omitted)), *cert. denied*, 138 S. Ct. 650, 199 L. Ed. 2d 531 (2018); *see also Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) ("In the context of fee awards to prevailing accused infringers, we have observed that § 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice'. . . ."). And even if a court determines fees should be awarded, "the amount of the award must bear some relation to the extent of the misconduct." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1278 (Fed. Cir. 2018) (internal quotations and citation omitted); *see also Freedom Sci., Inc. v. Enhanced Vision Sys., Inc.*, No. 8:14-CV-1229-T-36JSS, 2016 WL 2865353, at *2 (M.D. Fla. May 17, 2016) ("[T]he amount of the attorney fees depends on the

extent to which the case is exceptional." (citing *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001))).

A) <u>This Is Not an Exceptional Case.</u>

Improper motive is the crux of Z Keepers' argument as to why this case is exceptional. *See* Dkt. 168 at 5 (alleging case "stands out from other patent infringement cases because [it] was brought in bad faith, so that [Blaine] could exact revenge . . . ."). But motivation is only one of many factors a court should consider. *See, e.g.*, *Peschke Map Techs. LLC v. Miromar Dev. Corp.*, No. 215CV173FTM38MRM, 2016 WL 11220475, at *3 (M.D. Fla. Dec. 22, 2016) (listing "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence " as factors to consider and denying fee award (internal quotations omitted) (quoting *Octane Fitness*, 134 S. Ct. at 1756)), *report and recommendation adopted*, No. 215CV173FTM38MRM, 2017 WL 991481 (M.D. Fla. Mar. 15, 2017). Regardless of any alleged motivation, "considering the totality of the circumstances," Z Keepers "has not demonstrated by a preponderance of the evidence that this case meets the exceptionality threshold to warrant an award of attorneys' fees." *Chico's FAS, Inc. v. Clair*, No. 213CV792FTM38MRM, 2018 WL 1062726, at *3 (M.D. Fla. Feb. 27, 2018) (denying fee award).

As an initial matter, "it was not objectively unreasonable or frivolous for Plaintiff to pursue its claims in this action." *Freedom Sci.*, 2016 WL 2865353, at *3. Even Z Keepers does not argue otherwise. In fact, where, as here, judgement has been entered only at the conclusion of trial, "one might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial." *Nat'l Assoc. of Gov't Emp., Inc. v. Nat'l Fed'n of Fed. Emp.*, 844 F.2d 216, 223 (5th Cir. 1988); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875

(Fed. Cir. 2010) (stating "the district court's denial of summary judgment of noninfringement reflects the belief that it was reasonable for [plaintiff] to have retained that patent for suit."). Therefore, "even if the Court agreed with Plaintiff's argument about motivation, the Court [sh]ould still find that the case is not exceptional under Section 285 of the Patent Act." *Freedom Sci.*, 2016 WL 2865353, at *4 (explaining motivation in bringing suit is only one factor and insufficient to find case exceptional where claims were not objectively unreasonable); *see Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1584 (Fed. Cir. 1993) (affirming denial of fees where "there is no evidence of record that [plaintiff] pursued its patent infringement claim without a reasonable belief in its merits"). At the end of the day, Cinclips' position was that Z Keepers' product infringed the '609 Patent. Z Keepers' position was that its product did not infringe and that the patent was not valid. This was a reasonable dispute to put to the jury.

Because this case is neither objectively unreasonable nor frivolous, fees for the sake of deterrence are not warranted. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930–31 (2015) (characterizing § 285 as "safeguard[]" and "stress[ing] that the district courts have the authority and responsibility to ensure frivolous cases are dissuaded" (citation omitted)); *cf. Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1183 (Fed. Cir. 2018) (explaining "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims" may render a case exceptional). Similarly, to compensate Z Keepers for defending against Cinclips' reasonable infringement claims would run afoul the Supreme Court's instruction "that fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (quoting *Octane*

*Fitness*, 134 S.Ct. at 1753 (citation omitted)) (finding district court abused its discretion in finding case "exceptional"), *cert. denied*, 138 S. Ct. 650, 199 L. Ed. 2d 531 (2018).

Although Z Keepers' arguments each fall under its umbrella allegation that the case was "brought in bad faith," Z Keepers' Motion also contains scattered allegations of litigation misconduct. *See* [Dkt. 168 at 5]. But many of these allegations improperly characterize what happened at trial. And none of them constitute litigation misconduct sufficient to find that the case is "exceptional" such that fees should be awarded. *See Peschke Map Techs.*, 2016 WL 11220475, at *7 (M.D. Fla. Dec. 22, 2016) (explaining "litigation misconduct include[s] a patentee's destruction of relevant documents, lodging incomplete and misleading extrinsic evidence, [] attempts to induce a nuisance settlement by instituting a meritless claim. . . . misrepresentation of both the law of claim construction and the construction found by the court; and introducing expert testimony that failed to meet a minimal standard of reliability that prolonged the litigation.") (internal citations omitted).

Z Keepers argues initially that Blaine offered "false testimony." But Z Keepers does not explain why it did not cross examine or impeach Mr. Blaine on this purportedly false testimony. Z Keepers points to two (2) invoices accounting for sales of less than $600 of a product not at issue in this litigation. Z Keepers fails to direct the Court to the prior twenty (20) invoices reflecting sales of the product not at issue in this litigation prior to Defendant's Dec. 1, 2017 letter. In sum, prior to Defendant obtaining any patent rights on the other product, Cinclips made certain sales. When Defendant obtained patent rights, Cinclips stopped. While this litigation within a litigation should have no bearing on Z Keeper's motion, it certainly does not rise to the level of making this case stand out from the others to warrant the extraordinary relief Z Keepers seeks.

Z Keepers' allegations regarding Blaine selling knock-off GoClips is wholly irrelevant to the question of whether ***this case***—a case alleging infringement of Cinclips' product with no counterclaims alleging infringement of Z Keepers' GoClips—is exceptional. *See* [Dkt. 168] at 6–8. Second, Z Keepers' allegation that Blaine contacted a testifying witness to tell him "that he was doing very well in the case" is harmless conduct. The testifying witness, Devon Bogue, had testified the previous day that he believed Cinclips' product was superior and that Bogue wished he had invented it. *See* Trial Transcript, testimony of Mr. Bogue at 11:17-21 ("[Question] … you would prefer to use [Cinclips' product], you think it's a superior technology than – A. Oh absolutely. I mean this [Cinclips' product] is amazing. I wish I had thought of it.") Mr. Blaine, the patent-owner and inventor, was justifiably excited to hear this from the defendant's witness. There is nothing wrong with Mr. Blaine calling this witness, who Mr. Blaine has known for years, to say Mr. Blaine thought the witness did a good job.

Z Keepers next builds a strawman that it then struggles to tear down. Specifically, Z Keepers argues that Mr. Blaine "obscured from the jury evidence that the language of the '609 patent claim 16 was written specifically to read on the structure of the U-Mounts device." *See* [Dkt. 168 at 10]. But Z Keepers can point to no testimony or other fact whatsoever to support this statement because it simply is not true. Indeed, the jury's conclusion that there was no infringement conclusively proves the opposite. If the claim had been drafted "specifically to read on the structure of the U-Mounts device," then surely the jury would have found that the claim was infringed. Z Keepers took no discovery on this topic. Z Keepers never served any discovery on the patent attorney who prosecuted the '609 Patent. Z Keepers never deposed anyone in this litigation, including the patent attorney who prosecuted the '609 Patent. Z Keepers has no basis to make this misstatement, and it is false.

Z Keepers Motion then presents, yet again, its claim construction argument. Z Keepers has now presented this argument at least four (4) times to the Court in this litigation, each time having the argument squarely rejected. First, Z Keepers claim construction positions (which is all this argument is) were flatly rejected. *See* [Dkt. 82]. Next, Z Keepers' attempt for a second bite at the claim construction apple was rejected by the Court. *See* [Dkt. 123]. Z Keepers presented its claim construction argument a third time through the cross-examination of Mr. Blaine at trial, devoting a significant amount of trial time to the specification's terminology notwithstanding the Court's clear rulings on claim construction. *See e.g.* Tr. Transcript at pages 257-263. And now again, Z Keepers presents its claim construction argument relating to the second end's back surface cap member, as somehow an assiduous attempt to obtain patent rights.

While only mentioned in a footnote, it is important to note that, notwithstanding the lengthy discussion Z Keepers took Mr. Blaine through on the meaning of "arcuate" and other terms in the specification, the jury was not convinced that the claims lacked adequate written disclosure. Nor was the Court convinced that the claims lacked adequate written disclosure, as the Court rejected Z Keepers' argument on this point in ruling on summary judgment. *See* [Dkt. 82] at 5-8. Nor was the Court convinced that the claims lacked adequate written disclosure when Z Keepers essentially sought reconsideration of the Court's summary judgment decision. *See* [Dkt. 123] at 2.

Z Keepers' reliance on *MarcTec* is misplaced, and demonstrates why a fee award would be entirely inappropriate. *See* [Dkt. 168] at 14–15 (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012)). The court in *MarcTec* held that (1) "patentee's proposed claim construction was frivolous, and thus supported finding that patentee brought and maintained action in subjective bad faith;" and (2) "patentee pursued objectively baseless claim[.]" *MarcTec,*

*LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012). Despite Z Keepers' contention that this case presents "analogous circumstances," it does not. *See* [Dkt. 168] at 14. To start, judgment in *MarcTec* was granted on defendant's motion for summary judgment. Here, judgment was not entered until trial, signifying Cinclips' claims were not without merit. *See supra*, *ResQNet.com, Inc.*, 594 F.3d at 874 ("It is significant that the district court declined to grant summary judgment of noninfringement, and the ′608 patent proceeded to full trial.")

Cinclips' proposed claim construction was not frivolous. In fact, the Court "adopted Cinclips' proposed construction for each disputed term except for one, 'a distal end.'" *See* [Dkt. 123] at 2 (citing [Dkt. 82] at 8); *see also Freedom Sci.*, 2016 WL 2865353, at *3 ("a party's interpretation of its claim—and claim language—need not be correct to be reasonable"). And unlike the plaintiff in *MarcTec*, following the Court's claim construction, Cinclips did not "persist[] in advancing unfounded arguments that unnecessarily extended this litigation and caused [defendant] to incur needless litigation expenses." *MarcTec*, 664 F.3d at 920–21 (Fed. Cir. 2012). To the contrary, Z Keepers' filed an unnecessary motion challenging the Court's prior claim construction, requiring Cinclips to "incur needless litigation expenses." *Id.* at 921; *see* [Dkts. 103, 107]; *see also* [Dkt. 123] at 2 (agreeing with Cinclips that Z Keepers' "Motion is simply a second attempt at claim construction or essentially a motion for reconsideration of the Court's prior construction."). Cinclips' claim construction positions were entirely reasonable as reflected by the Court's continued adoption of them. Z Keepers' attempt to align this case with *MarcTec* fails.

Z Keepers next devotes attention to Mr. Blaine's testimony as to whether the plurality of screw holes was formed "along the length of the second end." *See* [Dkt. 168] at 15-19. Casting allegations at both Mr. Blaine and undersigned counsel, Z Keepers argues that the presentation

was "bad faith."  Z Keepers cites no law to support this argument.  While the argument is false, it is also irrelevant.  The purpose of trials is to allow the fact finder to weigh the testimony.  While the parties can disagree as to what "along the length" means for purposes of claim construction, Z Keepers cross examined Mr. Blaine on the location of the screw holes, and sought testimony from its own witness on the location of the screw holes.  *See e.g.* Trial Transcript at 245-246.  More importantly, on cross examination, Cinclips spent a fair amount of time highlighting for the jury that Z Keepers' argument was that the triangular arrangement of the screw holes was one of Z Keepers' primary noninfringement arguments.  *See* Trial Transcript at 490:8-10 ("Q.  Okay.  So you have extending through the back surface cap member are a plurality of screw holes, but you say not formed along the length of the second end, right?"…); 491:2-4 ("Q.  And I've highlighted that.  You don't agree that they are formed along the length of the second end, right?  A. That's fair."); 518:6-7 ("Q. And are they formed along the length of the second end?  A. They are not.")  Neither Cinclips nor its counsel avoided any claim language.  There was no bad faith in Cinclips' litigation presentation.

Lastly, Z Keepers alleges that "[d]uring the cross examination of Smith, Plaintiff attempted to imply that Smith somehow violated the Patent Act by failing to disclose wedge cut furring strips as prior art when filing his provisional patent application, when the Patent Act only requires such disclosures for a formal patent application submission."  *See* [Dkt. 168] at 20 (internal citation omitted).  Z Keepers then alleges that "during a sidebar, counsel misrepresented to the Court that the duty of candor and oath or declaration applied to Smith's provisional application thus requiring a prior art disclosure."  *Id.*  Z Keepers misstates the sidebar discussion; no misstatement was made.  Rather, the argument presented at sidebar was that *anyone* dealing with the Patent Office *has a continuing duty of candor*.  *See* Trial Transcript at 458:2-15 ("When

14

you practice in front of the Patent Office or you, or an inventor, are making representations to that office, you have a duty of candor to the Patent Office…"); 460:12-13 ("Any dealings with the Patent Office, yes, there is a duty of candor."); 460:18-19 ("You always have a duty of candor with the Patent Office.") As represented at sidebar, anyone dealing with the Patent Office has a duty of candor. *See* 37 C.F.R. § 1.56 ("*Each individual* associated *with the filing* and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.") (emphasis added). *See also* Exhibit B, Manual of Patent Examining Procedure § 2001.03 ("This duty in 'in dealing with' and 'to' the Office extends, of course, *to all dealings* which such individuals have with the Office, and is not limited to representations to or dealings with the examiner.") (emphasis added). More importantly for the present motion, the Court then instructed Cinclips to move on from that line of questioning, which it did. Again, there was no bad faith, and certainly nothing to justify an award of fees.

Z Keepers then concludes by pointing to Mr. Blaine's confusion during portions of his testimony and arguing that his confusion was bad faith. That is simply not true, and does not bring this case into the category of cases that stand out and warrant and award of attorney's fees.

This is not an exceptional case. Rather, "[t]his case is quite ordinary: a defense verdict [on infringement] in a tightly contested patent case in which the parties engaged in a hard-fought battle." *NXP B.V. v. Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1318 (M.D. Fla. 2014) (citation omitted). Accordingly, deviation from the American Rule is not justified and Z Keepers' Motion should be denied. *See, e.g., Freedom Sci.*, 2016 WL 2865353, at *3 (concluding "that Defendant is not entitled to attorneys' fees pursuant to Section 285" because (1) "although the Court

ultimately found against Plaintiff, it was not objectively unreasonable or frivolous for Plaintiff to pursue its claims in this action;" and (2) "although the conduct of Plaintiffs and Plaintiffs' counsel in this litigation left much to be desired, it was not so unreasonable as to warrant a finding of exceptionality.").

### B) Z Keepers Has Not Shown Counsel's Fees Are Reasonable.

Even if this Court finds fees are warranted, Z Keepers has not established that its requested attorneys' fees are reasonable. As the fee applicant, Z Keepers' "bears the burden of establishing entitlement to the hours requested as well as to the hourly rate." *Lehr v. Secure Capital Mgmt., Inc.*, No. 8:14-CV-2099-T-33MAP, 2014 WL 5810487, at *7 (M.D. Fla. Nov. 7, 2014) (citing *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242 (1985)). Although Z Keepers' counsel has submitted affidavits and exhibits as to the hours worked *See* [Dkts. 164–167], neither Z Keepers nor its counsel has produced any, let alone satisfactory, "evidence that the requested rate is within the prevailing market rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Z Keepers provided only its own affidavit and that of the counsel performing the work. This is not sufficient and warrants denial of the fee request. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work.") Such evidence must be through direct evidence of charges by lawyers in similar circumstances, or through opinion. *Id*. Z Keepers offers neither. Z Keepers' Motion should be denied.[2]

---

[2] Alternatively, if the Court grants Z Keepers' Motion, the amount of fees requested should be reduced because this case is not so exceptional as to require Cinclips to pay Z Keepers' entire legal bill. *See, e.g.*, *Special Devices*, 269 F.3d at 1344 ("[T]he amount of the attorney fees depends on the extent to which the case is exceptional." (citing cases)); *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d at 1277–78 (finding "that the fee award is excessive and unreasonable because the district court failed to establish a causal connection between the claimed misconduct and the fees awarded" and explaining "[a] finding of exceptionality based on litigation misconduct[ ] ... usually does not support a full award of attorneys' fees." (internal quotations and citation omitted)).

**IV) CONCLUSION**

For the foregoing reasons, Cinclips respectfully requests that the Court deny Z Keepers' Motion.

November 5, 2018

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack
Florida Bar No.: 26802
Shutts & Bowen, LLP
4301 W Boy Scout Blvd
Suite 300
Tampa, FL 33607
(813) 463-48948
(813) 227-8234 (facsimile)
wpollack@shutts.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 5, 2018, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack